IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **ROY LEE DUCHESNE** | * | **CIVIL ACTION NO. 06-607** |
| **VERSUS** | * | **JUDGE JAMES** |
| **THE SHAW GROUP INC.** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion for summary judgment filed by Defendant, the Shaw Group, Inc. ("Shaw Group") (Document No. 26). The motion is opposed (Document No. 42), and Plaintiff, Roy Lee Duchesne ("Duchesne"), asserts his own motion for summary judgment. For reasons stated below, it is recommended that Shaw's motion for summary judgment be **GRANTED** and that Duchesne's motion for summary judgment be **DENIED.**

## PROCEDURAL BACKGROUND

On April 6, 2006, Duchesne ("Duchesne") filed this action alleging that Shaw violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2617 *et seq*., by denying him FMLA leave and by terminating him in retaliation for seeking FMLA leave. Duchesne seeks damages in the form of lost wages, salary, and employment benefits, in addition to liquidated damages based on the allegation that Shaw's actions were willful and malicious.[1]

On June 5, 2008, Shaw filed a Motion for Summary Judgment claiming that (1) Duchesne's FMLA interference claim fails as a matter of law due to the fact that Duchesne admitted that he was never prohibited from taking the leave that he desired and (2) Duchesne's FMLA retaliation claim fails due to the fact that he has adduced no evidence supporting his

---

[1] Duchesne also seeks court costs and attorney's fees.

assertion that he was fired for requesting FMLA leave and, even if he had adduced such evidence, Shaw has come forward with a legitimate, non-retaliatory reason for Duchesne's termination, which Duchesne has not rebutted. On July 23, 2008, Duchesne filed a response to the motion, in which he argues that Shaw has failed to establish that it is entitled to summary judgment. In addition to his response to Shaw's motion for summary judgment, he also asserts that he is entitled to a grant of summary judgment.

**FACTUAL BACKGROUND**

Duchesne was employed on two separate occasions as a pipefitter for Shaw. He was first hired at Shaw by his long-time friend, Mike Deville ("Deville"). During his first tenure at Shaw, Duchesne was written up on more than one occasion for horseplay. Duchesne's first tenure ended when he quit in order to seek a job that paid more money. His immediate supervisor wrote on the termination paperwork that Duchesne was a "damn good worker [and] fitter" but that his cooperation was "not so good." (Shaw's Exhibit 2). Duchesne disputes the claim that he was uncooperative, but he admits that he was "hard-headed" towards his supervisor. Duchesne's second employment with Shaw began on March 26, 2003. His immediate supervisor was Kenny McCurdy ("McCurdy"), and McCurdy's supervisor was Deville. Duchesne felt that Deville spoke too harshly to his employees; however, they remained close friends for some time thereafter.

Prior to his second employment at Shaw, Duchesne's mother was diagnosed with lymphoma. She subsequently went into remission, but the cancer returned in December 2003, at which time she was admitted to the hospital. Following being released from the hospital, Duchesne's mother entered a nursing home facility for hospice care, where she remained until her death in September 2004.

In January 2004, Duchesne discussed with Deville the possibility of being placed on

FMLA leave so that he could visit his mother whenever he desired.[2] Deville informed Duchesne that he was not eligible for FMLA leave because he had not been employed with Shaw for twelve months. Duchesne disputes that he was ineligible for FMLA leave, but he admits that Shaw allowed him to leave to visit his mother whenever he wanted. Nonetheless, Deville asked that Duchesne submit a note verifying that he had, in fact, been visiting his mother. Duchesne does contend, however, that Deville was "far from magnanimous regarding visitation." He further contends that Shaw does not indicate whether there was a policy in place requiring a note except for Deville's alleged warning of Duchesne not to return to work without a doctor's excuse. Duchesne admits that he missed work a good deal while visiting his mother and that Deville had no problem with him missing work for this reason. He stated in his deposition that Deville began requiring him to provide a doctor's excuse because Deville was facing a claim of racial discrimination by another employee and needed the excuses from Duchesne to defend against such claim.

On some occasions, Deville helped Duchesne by not making him record all of his absences resulting from visiting his mother and by not docking his pay. At some point during the time period that Duchesne was missing work to visit his mother, Deville discovered that Duchesne would sometimes go fishing after the visits rather than return to work. Duchesne contends that after seeing his dying mother, he needed some type of internal therapy or respite to reduce his psychological stress, and that it would have been unsafe for him to return to work in a depressed state. Deville confronted Duchesne and told him that he needed to submit excuses to

---

[2] Duchesne contends that he requested FMLA leave on three or four occasions, which Shaw disputes. Duchesne admits that he does not know the dates of these requests. In addition, although Duchesne fails to make reference to it, he testified that when he requested to be put on FMLA, Deville repeatedly told him that he did not need it and that they would "get around" it. (See Shaw Ex. A, p.1).

confirm that he was actually visiting his mother during his absences, and that he would be satisfied with a note from the nursing home verifying Duchesne's visit. According to Duchesne, it was at this time that he requested to be put on FMLA leave in order to avoid the administrative hassle of being required to provide a note for every absence.

Duchesne missed work on May 3, 2004, and did not call anyone at Shaw to say that he would not be there, which was required. On May 4, 2004, Duchesne and Deville got into an argument regarding Duchesne's failure to provide an excuse for his absence the day prior. Deville informed Duchesne that he had no problem with Duchesne leaving work to visit his mother but, again, he needed to submit a note verifying the visit. According to Duchesne's deposition, it was at this time that Deville, amidst numerous profanities, made the aforementioned statement that if Duchesne missed work, he was not to return without a doctor's excuse. Deville maintains in his affidavit that Duchesne was not visiting his mother on May 3, 2004; rather he was in another state attending a deposition in lawsuit against his former employer. Duchesne disputes this fact, referring to his deposition testimony that he did not know where he was on May 3, 2004. However, he later admits that he provided Deville with note stating that he had been in Arkansas for a deposition on May 3, 2004.

Duchesne yelled and directed profanities at Deville and McCurdy and stated that "Shaw is a sorry company to work for."[3] (See Shaw's Statement of Material Facts at 4). When Duschesne continued yelling, Deville requested that the two take the conversation outside and told Duchesne to walk in front of him because, according to Deville, he was afraid that Duchesne would hurt him physically. Duchesne disputes that Deville was in fear of being assaulted.

---

[3] In his Statement of Material Facts, Duchesne relies on the "difficult time that was levied upon a son because he was being denied his rights to see his mother under the FMLA" as justification for his actions.

Deville subsequently suspended Duchesne for three days. According to Deville's affidavit, the suspension was a result of Duchesne's failure to call when he missed work to attend the deposition and his insubordinate conduct in yelling and refusing to follow instructions. Duchesne testified that Deville later terminated him because he was angry with him because of the altercation. He also asserts in his response to Shaw's Statement of Material Facts that his suspension was directly related to issues regarding his visits with his mother.[4]

When Duchesne returned to work, he was drug tested. Duchesne disputes Deville's contention that Duchesne was randomly selected for testing. The results of the test were negative, and Duchesne was paid for the time spent taking the test. Duchesne also requested that he be placed on FMLA leave when he returned work. Duchesne was provided with FMLA paperwork, including instructions that he submit a physician's certification in support of his leave. Duchesne did not complete the paperwork or submit the certification.

According to Deville's affidavit, prior to Duchesne's absence on May 3, 2004, and the resulting altercation, Deville and his boss decided to layoff some employees in the fabrication shop where Duchesne worked due to recent project delays that were presenting budgetary concerns. Deville maintains that his boss suggested that they layoff two persons in each of the positions based on who was hired last in each position. On May 14, 2004, Shaw laid off fifteen employees, including Duchesne. Deville claims that a few decisions were based on performance, but the remainder were based on the date of hire, including the decision to terminate Duchesne, who was the last pipefitter hired.[5] Duchesne disputed all of Deville's claims in this regard in his

---

[4] The undersigned notes that Duchesne cites to no specific evidence in the record supporting that assertion.

[5] Deville states that the other pipefitter who was fired, Bobby Rogers, was fired based on performance issues, not his date of hire.

Statement of Material facts; however, he did not support his assertions with his own affidavit or any other evidence. Duchesne admits that Shaw laid off many people in addition to himself who were not rehired for months thereafter and that no employees were hired for months after he was laid off. Duchesne does not dispute that there was a limited amount of overtime worked in the week after Duchesne was fired, and there was no overtime worked the following week. Duchesne also does not dispute that the layoffs saved Shaw money, even taking into account the limited overtime worked the following week.

Shaw, relying on Deville's affidavit, maintains that no one said anything to Duchesne to suggest that they harbored hostility for Duchesne needing to take time off of work to care for his mother. Duchesne disputes this contention, referring to the portion of his deposition in which he stated that he did not know if anyone at Shaw ever said that they did not like employees to take FMLA leave. In his affidavit, Deville states that other employees have sought and obtained FMLA leave, both before and after Duchesne's need for leave to visit his mother and that those people were not terminated as a result of their leave. He also states there were other persons who were on FMLA leave who were not terminated when Duchesne was terminated and some of the employees terminated along with Duchesne were neither on FMLA leave nor had they ever requested FMLA leave. Duchesne accepts these facts as undisputed, but qualifies his acceptance with the contention that there is no documentation supporting Deville's affirmation that would make the affirmation more credible.

## LAW AND ANALYSIS

### *I. Summary Judgment Standard*

Summary judgment is appropriate when the evidence before the Court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An

issue is "genuine" under this standard if the non-moving party has presented sufficient evidence such that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## II. FMLA Claims

"The Family and Medical Leave Act of 1993 allows eligible employees working for covered employers to take temporary leave for medical reasons, for the birth or adoption of a child, and for the care of a spouse, child, or parent who has a serious health condition, without the risk of losing employment." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001) (citing 29 U.S.C. § 2601(b)(1) and (2)). There are two separate provisions set forth in the FMLA, one prescriptive and one proscriptive. *Id.* at 763. The prescriptive provision gives employees certain entitlements and forbids employers from interfering with those entitlements. *Bocalbos v. Nat'l Western Life Ins.*, 162 F.3d 379, 383 (5th Cir. 1998). The proscriptive provision

7

of the FMLA prohibits an employer from penalizing an employee for exercising his or her rights under the FMLA. *Hunt*, 277 F.3d at 763.

In the case sub judice, although it is not clear from his complaint, Duchesne maintains that he is asserting that Shaw violated both his proscriptive and prescriptive FMLA rights, i.e. that Shaw both interfered with his entitlement to FMLA leave and terminated him in retaliation for requesting FMLA leave. Thus, each claim with be discussed separately below.

A. FMLA Interference

Among its entitlements, the FMLA gives an eligible employee a right to twelve weeks of unpaid leave within a twelve-month period to care for a close family member who has a "serious health condition." *Id.*; 29 U.S.C. § 2612(a)(1)(C). "After a qualifying absence, the employer must restore the employee to the same position or a position comparable to that held by the employee before the leave." *Boudreaux v. Rice Palace, Inc.*, 491 F.Supp.2d 625, 639 (W.D.La. 2007) (citing 29 U.S.C. § 2614(a)(1)). "An employer may not 'interfere with, restrain, or deny the exercise of ... any right provided under' the FMLA." *Id.* (citing 29 U.S.C. § 2615(a)(2); *Chaffin v. John H. Carter Co., Inc.* 179 F.3d 316, 319 (5th Cir.1999)). The term "interference" is not defined in the FMLA; however, a regulation promulgated by the Department of Labor states that "'[i]interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220. "In order to state a *prima facie* case of interference under the FMLA, an employee must demonstrate only that she was entitled to a benefit that was denied." *Anderson v. New Orleans Jazz & Heritage Festival and Found., Inc.*, 464 F.Supp.2d 562, 567 (E.D.La. 2006).

Shaw argues that it is entitled to a grant of summary judgment on Duchesne's FMLA interference claim because Duchesne does not dispute that Shaw never prohibited him from

8

visiting his mother and allowed him to do so whenever he desired. The undersigned finds this argument to be meritorious. The "FMLA's remedial scheme requires an employee to prove prejudice as a result of the employer's lapse." *Lubke v. City of Arlington*, 455 F.3d 489, 497 (5th Cir. 2006); *see also Richardson*, 2004 WL 287730 at *3 (stating that the FMLA "provides no relief unless the employee has been prejudiced by the violation.") (citation omitted). Here, although Duchesne contends that he asked Deville to place him on FMLA leave so that he would not have to go through the "arbitrary and capricious administrative requiremen[t]" of presenting a doctor's excuse every time he missed work to visit his mother, he admits that Shaw allowed him to visit his mother whenever he wanted.

Moreover, the record is devoid of any evidence that because of Deville's actions in informing Duchesne that he was ineligible for FMLA leave or in requiring Duchesne to submit a doctor's note each time he missed work to visit his mother, Deville reported to work rather than visited to his mother. On the contrary, the record reveals that while Duchesne may have been denied FMLA leave in a technical sense, in reality, he took all of the leave he wished to take. Therefore, even assuming *arguendo* that Deville somehow interfered with Duchesne's substantive FMLA rights, Duchesne has not demonstrated that he was in any way prejudiced by such interference. *See Richardson*, 2004 WL 287730 at *3 (granting summary judgment to employer on employee's FMLA interference claim based on the fact that, although employee felt that her absences and tardies should have been designated as FMLA leave, and was under the mistaken impression that they were so designated, she had not demonstrated prejudice from any alleged violation in that she had "failed to report to work and was unpaid, leaving her in roughly the same position as had she been determined eligible for, and subsequently taken formal FMLA

9

leave.").[6] Because Duchesne has failed to demonstrate that he was prejudiced by any alleged FMLA interference on the part of Shaw, Shaw is entitled to a grant of summary judgment on Duchesne's FMLA interference claim. Accordingly, it is recommended that summary judgment as to Duchesne's FMLA interference be GRANTED.

B. FMLA Retaliation

A *prima facie* case of FMLA retaliation requires a showing of the following elements: (1) the employee was protected under the FMLA; (2) the employee suffered an adverse employment decision; and (3) the employee was either treated less favorably than an employee who had not requested leave or the employer made the adverse employment decision because the employee took FMLA leave. *Hunt*, 277 F.3d at 768. If the employee makes such a showing, the burden shifts to the defendant to "articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action." *Id.* If the defendant satisfies this burden, the plaintiff must then show by a preponderance of the evidence that the defendant's stated reasoning is a pretext for retaliation. *Id.*[7]

---

[6] In addition, the FMLA does not allow for the recovery of nominal damages, punitive damages, or damages for emotional distress; rather, only actual monetary losses may be recovered. *Oby v. Baton Rouge Marriott*, 329 F.Supp.2d 772, 788 (M.D.La. 2004) (citing 29 U.S.C. § 2617(a)(1)(A)(I-iii). An employee may also be granted equitable relief, including "employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). Duchesne does not assert in his complaint or his memorandum in response to Shaw's motion for summary judgment that he is seeking to be re-employed by Shaw, and having failed to demonstrate that he suffered any prejudice as a result of Shaw's alleged interference with his right to FMLA leave, he has not shown that he has suffered any actual monetary loss due to the alleged violation.

[7] The undersigned notes that "[t]he traditional *McDonnell-Douglas* framework does not always apply in FMLA retaliatory discharge cases"; rather, [t]he mixed-motive framework applies to cases in which the employee concedes that discrimination was not the sole reason for her discharge, but argues that discrimination was a motivating factor in her termination." *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). Duchesne, however, makes no discernable mixed-motive claim. At no point does he concede that Shaw had a legitimate, nondiscriminatory reason for terminating him, and he disputes all of the facts regarding Shaw's proffered reason for his termination. *See Nasti v. CIBA Specialty Chemicals*

Shaw does not, for the purposes of its motion for summary judgment, dispute that Duchesne can satisfy the first two elements above; rather, Shaw argues that is entitled to summary judgment on Duchesne's retaliation claim because Duchesne cannot establish that he was either treated less favorably than employee who had not requested leave or that he was terminated because he requested FMLA leave. Shaw further argues that even if Duchesne were able to establish a *prima facie* case of retaliation, his claim would nonetheless fail because Shaw has come forth with a legitimate, non-retaliatory reason for Duchesne's termination, and Duchesne has alluded to no evidence showing that Shaw's stated reasoning is pretextual.

As support for its argument that Duchesne cannot establish a causal connection between his termination and his missing work to visit his mother or requests for FMLA leave, Shaw relies on the following: (1) no one at Shaw ever indicated that they harbored hostility towards Duchesne for needing to miss work to visit his mother; (2) Deville went out of his way to help Duchesne, even paying him for some of absences; (3) Duchesne admitted that the three-day suspension Deville gave him after the altercation between the two was unrelated to his mother's illness; rather, it resulted from Duchesne's failure to call in when he attended the deposition and his inflammatory comments during the argument[8]; (4) Duchesne took a prior leave of absence for his own health problems and surgery and Shaw took no negative action against him as a result;

---

*Corp.*, 492 F.3d 589, 595 (5th Cir. 2007) (finding that the plaintiff had failed to present a mixed-motive argument to the district court, and thereby failed to preserve the argument for appeal, because she had not conceded in the district court that the defendant had a legitimate reason to terminate her).

[8] As support for the proposition that Duchesne admitted that his discipline by Deville was unrelated to his mother's illness, Shaw refers to a portion of Duchesne's deposition in which he states that he was he was meeting with the lawyer representing him in his lawsuit against a former employer on the day prior to the altercation he had with Deville and that the lawsuit had nothing to do with his mother. The undersigned does not interpret Duchesne'e testimony in this regard to be an admission that his discipline was unrelated to his mother's illness; rather, at most it is an admission that his absence was not related to his mother's illness.

and (5) other employees of Shaw who obtained FMLA leave both before and after Duchesne were not terminated, and many employees who were laid off at the same time as Duchesne were not on FMLA leave.

Duchesne devotes a large portion of his memorandum in response to Shaw's motion for summary judgment to demonstrating why he was entitled to FMLA leave rather than citing to specific facts supporting his contention that he was fired in retaliation for exercising his rights under the FMLA. Duchesne does state that there would not have been any need to terminate him because he was told that he was a good worker. In his response to Shaw's statement of material facts, Duchesne again alludes to his deposition testimony regarding the termination paperwork from when his first term of employment at Shaw ended, in which his supervisor stated that he was "a damn good worker." In response to Shaw's contention that he admitted that on May 3, 2004, the day prior to the altercation with Deville, he was not visiting his mother, but was in another state attending a deposition, Duchesne refers to his deposition testimony that he did not know where he was on that day.[9]

It appears that Duchesne's argument with regard to his retaliation claim is that Deville terminated him as a result of the altercation between two, which he claims began as a result of Duchesne's request for FMLA leave, Deville's denial of that request, and Deville's repeated

---

[9] Later in his deposition, Duchesne testified that he attended a deposition in Arkansas on May 3, 2004, however, immediately thereafter he again stated that he did not remember where he was that day. He then again indicated that he was at the deposition on the day prior to the altercation with Deville. Moreover, attached to Shaw's motion for summary judgment is letter from Duchesne's attorney in the lawsuit against his former employer stating that a deposition had been set for May 3, 2004, regarding his claim. The letter contains a notation, presumably written by a Shaw employee, stating that the employee "called but could not confirm employee was present on May 3, 2004." (Shaw Ex. 10).

insistence that Duchesne provide an excuse whenever he missed work to visit his mother.[10] Shaw contends that the altercation, and Duchesne's subsequent three-day suspension, arose out of Duchesne's failure to call in when he missed work to attend the deposition, which was not an FMLA-qualifying absence; therefore, argues Shaw, Duchesne cannot establish a causal connection between the altercation and his termination.

Duchesne admits that there were other people terminated at the same time he was who were never on FMLA leave and never requested FMLA leave. He also admits that other employees of Shaw who have sought and obtained FMLA leave, both before and after his need for leave to visit his mother, were not terminated as a result of taking leave. Therefore, Duchaine has provided no evidence indicating that he was treated less favorably than an employee who had not requested FMLA leave. However, Duchesne may still show a *prima facie* case of retaliation by adducing evidence that he was fired for engaging in FMLA-protected activity.

With regard to the altercation that occurred between Duchesne and Deville on May 4, 2004, although Duchesne refers to his deposition testimony that he did not know where he was on May 3, 2004, the day prior to the altercation, he later admits that it is undisputed that after the altercation he provided Deville with a note from his attorney stating that he was at a deposition in Arkansas on May 3. Regardless, however, of the reasoning for Duchesne's absence, the undersigned finds that there is sufficient evidence in the record from which a reasonable jury could conclude that Duchesne has established a *prima facie* case of FMLA retaliation. Duchesne testified in his deposition that on the day of the altercation between himself and Deville, Deville approached him about whether he had a doctor's excuse for missing the day before, and when

---

[10] Duchesne argues that "[h]ad plaintiff's request been granted when requested, there would not have been any argument regarding the administrative need for a note, ergo, not termination."

Duchesne said no, Deville stated, "Don't come back to work if you miss a day without a doctor's excuse. If you miss a day to go see your mother, Bully, don't show back up here unless you've got a doctor's excuse because I've got to cover my butt."[11] Assuming, for purposes of this motion that Duchesne can establish that he was protected under the FMLA and suffered an adverse employment decision, Deville's comments, viewed in the light most favorable to Duchesne, are probative of at least some hostility on the part of Deville with regard to Duchesne's visits to his mother.

Moreover, although Duchesne fails to make the argument, "[w]hen evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the 'temporal proximity' between the [FMLA-protected activity] and the termination." *Mauder v. Metro. Transit Authority of Harris County, Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (quoting *Wilson v. Lemington Home for the Aged*, 159 F.Supp.2d 186, 195-96 (W.D.Pa. 2001)). In this case, assuming, as we must, that Duchesne's allegations are true, Deville's comments, and the subsequent altercation, occurred on May 4, 2004, and it is undisputed that Duchesne was terminated on May 14, 2004. The Fifth Circuit has held that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (quoting *Armstrong v. City of Dallas* 997 F.2d 62, 67 (5th Cir.1993). In *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001), which

---

[11] Although Duchesne fails to make reference to it, he also recalled an incident in which Deville approached him at work with list of dates that he had missed for visits to his mother and asked for doctor's excuses for those days. Duchesne stated that he called his mother's doctor, who faxed Deville an excuse. Then, according to Duchesne, Deville approached him again claiming that the excuse faxed by the doctor was not what he wanted; rather, he needed, "individual copies of whatever" so that he could "cover his butt" with the black employee who was claiming race discrimination.

involved a Title VII retaliation claim, the Fifth Circuit found that a time period of five days between the employee's protected activity and her termination was sufficient on its own to establish a causal connection such that the plaintiff could establish the causal connection *prima facie* element of her retaliation claim. The Fifth Circuit has also held that fifteen-day lapse and a two-and-one-half month lapse were sufficient to create an inference of a causal connection. *See Ware v. CLECO Power LLC*, 90 F. Appx. 705, 708 (5th Cir. 2004); *Richard v. Cingular Wireless LLC*, 233 F. Appx. 334, 338 (5th Cir. 2007). Although it is unclear from the record exactly when Duchesne last visited his mother prior to his altercation with Deville, there is evidence indicating that Deville's comments and the altercation occurred only ten or eleven days prior to Duchesne's termination. The combination of Deville's comments and the temporal proximity of those comments to Duchesne's termination are sufficient to create an inference of a causal connection between Duchesne's termination and his visits to his mother. *See Richardson,*, 434 F.3d at 335 (finding that hostile remarks by an employer and the temporal proximity of the remarks to the employee's termination were sufficient to create a genuine issue of material fact with regard to whether the retaliation was a motivating factor in employee's termination).[12] Therefore, the undersigned finds that there is sufficient evidence in the record to establish a genuine issue of material fact as to whether Duchesne was terminated in retaliation for engaging in FMLA-protected activity.

This finding, however, does not end the inquiry in this case. As noted above, once the employee establishes a *prima facie* case of retaliation, the burden then shifts to the defendant to

---

[12] In *Richardson*, the employee overheard her employer say to another employee "We'll just fire her ass. We'll worry about it later." 434 F.3d at 335. The employee confronted the employer about the comments, in response to which the employer stated that he was "'tired of all this stuff' going on with her"; also, the employee testified that she was told by the head of the human resources department that the company had "accommodated her enough." *Id.*

produce a legitimate nondiscriminatory or nonretaliatory reason for the adverse employment action. In the case sub judice, Shaw has met this burden. Shaw has submitted evidence that, prior to Duchesne's absence on May 3, 2004, and his altercation with Deville, Shaw had decided to lay off some employees in the fabrication shop where Duchesne worked due to budgetary concerns. The evidence further indicates that two persons in each division were laid off, and that, in most cases, the decision of who to lay off was based on who was hired last in each of the positions. Because Duchesne was the last pipefitter hired, he was laid off along with fourteen other employees.

Duchesne has submitted no probative evidence indicating that Shaw's stated reasoning for his termination was pretext. "The pretext inquiry focuses on the authenticity of the employer's proffered reason." *Nasti*, 492 F.3d at 594. "A 'plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000)). When an employer articulates a legitimate, nondiscriminatory reason for the employee's termination, the employee may survive summary judgment "by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 897 (5th Cir. 2002).

Duchesne has submitted no evidence indicating that Shaw's asserted justification for terminating him is false. Duchesne states that, based on the criteria for the layoff, he, a "stated good worker," would not have been terminated if not for the FMLA leave requested and denied by Shaw. However, Shaw's evidence clearly indicates that in Duchesne's case, the criteria for the layoff was the lack of seniority of the employees affected, not performance. Therefore, the fact that Duchesne was a good worker does not indicate that Shaw's justification for terminating him

16

was in any way false or pretextual. Duchesne has submitted no probative evidence that he was not, as Shaw claims, the last pipefitter hired or that Shaw did not, in fact, base the decision to terminate him on the fact that he was the last pipefitter hired. Moreover, Duchesne admits that although there was a limited amount of overtime worked the week following his termination, there was no overtime worked the next week, and that the layoffs saved costs even taking into account the limited overtime worked.

Although Deville's continued insistence on Duchesne's providing a doctor's note and his alleged comments prior to the altercation could, under certain circumstances, support a retaliation claim, given Duchesne's failure to present any other significant probative evidence discrediting Shaw's proffered nondiscriminatory reason for terminating him, the undersigned concludes that no reasonable jury could find that Shaw's stated reasoning for terminating Duchesne was pretextual.[13] Shaw has submitted uncontroverted evidence that Duchesne, along with fourteen other employees, was terminated due to budgetary concerns and that Duchesne's status as the last pipefitter hired was the reason he was chosen for termination. *See Stroud v. BMC Software, Inc.*, 2008 WL 2325639, *7 (5th Cir. 2008) (stating that the fact that the plaintiff was laid off along with 800 other employees as a part of a reduction in workforce strongly suggests that there was no retaliatory purpose in the plaintiff's termination). Thus, as Duchesne has failed to offer evidence to rebut Shaw's legitimate, non-discriminatory reason for terminating him, Shaw is entitled to a grant of summary judgment on Duchesne's FMLA retaliation claim. Accordingly, it is recommended that Shaw's motion on this ground be GRANTED.

## CONCLUSION

---

[13] "[A]n oral statement exhibiting discriminatory animus may be used to demonstrate pretext or . . . it may be used as additional evidence of discrimination." *Sharkey v. Dixie Elec. Memhership Corp.*, 262 Fed.Appx. 598, 605 (5th Cir. 2008) (quoting *Laxton v. Gap, Inc.*, 333 F.3d 572, 583 (5th Cir. 2003).

17

Having viewing the evidence as a whole and in a light most favorable to Duchesne, the undersigned finds that Duchesne has failed to establish that there is a genuine issue of material fact with regard to either his FMLA interference or retaliation claim. Accordingly, it is recommended that Shaw's motion for summary judgment be **GRANTED,** dismissing Duchesne's claims with prejudice, and that Duchesne's motion for summary judgment be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 10th day of September, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE